```
 1
 2
 3
 4
 5                    UNITED STATES DISTRICT COURT
 6                     SOUTHERN DISTRICT OF OHIO
 7                          WESTERN DIVISION
 8                               - - -
 9
10   HENRY WILLIAMS,                :
                                    :
11             Plaintiff,           :
                                    :
12   vs.                            :  CASE NO. C-1-02-533
                                    :
13   MILTON CAN COMPANY, INC. and   :
     BWAY MANUFACTURING,            :
14                                  :
              Defendants.           :
15                                  :
16                               - - -
17                            DEPOSITION
18   of GREGORY JAHNIGEN, taken before me, Kathy J. Nicholson,
19   Registered Professional Reporter and Notary Public in and
20   for the State of Ohio at large, as on cross-examination,
21   at the Hampton Inn, 858 Eastgate North Drive, in the City
22   of Batavia, County of Clermont, and State of Ohio, on
23   Tuesday, the 28th day of October, 2003, beginning at 9:04
24   o'clock, a.m.
25                               - - -
```

Charlene E. Nicholas & Assoc., Inc.
111 Briar Heath Circle, Dayton, OH 45415-2601
Phone: (937) 277-8512    Fax: (937) 275-81



EXHIBIT G

```
 1   APPEARANCES:

 2        On behalf of the Plaintiff:

 3        WILL ALLEN, ESQ.
          CASPER & CASPER
 4        One N. Main Street
          P.O. Box 510
 5        Middletown, OH  45042

 6        On behalf of the Defendant:

 7        DAVID BLACK, ESQ.
          DINSMORE & SHOHL
 8        1900 Chemed Center
          255 East Fifth Street
 9        Cincinnati, OH  45202

10   ALSO PRESENT:  JOHN MCMAHAN, HENRY WILLIAMS

11                         - - -

12                   INDEX OF EXAMINATION

13   Name of Witness                              Page
     Gregory E. Jahnigen
14
         Cross-Examination by Mr. Allen ..........  3
15       Examination by Mr. Black ................ 62

16

17                         - - -

18                    INDEX OF EXHIBITS

19                  NO EXHIBITS MARKED

20                         - - -

21

22

23

24

25
```

```
 1      A.   Yes.
 2      Q.   In the course of doing your job, do you
 3 occasionally get to that area?
 4      A.   Yes.
 5      Q.   Would you consider that to be a fairly well
 6 traveled area?
 7      A.   Yes.
 8      Q.   Both by pedestrians and fork trucks?
 9      A.   Yes.
10      Q.   Would you -- do you know what a blind corner is?
11      A.   Yes, sir.
12      Q.   Would you also agree that the corner formed by
13 the doorway exiting out to the dock area is a blind
14 corner?
15      A.   Yes.
16      Q.   And how about the corner of the building?
17      A.   Both corners are blind.
18      Q.   Okay.  Do you know at the time of Jake's injury,
19 do you know what a bull's eye mirror is?
20      A.   Yes.
21      Q.   Convex mirror, kind of gives you a broader view?
22      A.   Kind of fish eye looking thing?
23      Q.   Exactly.  Do you know if there were any bull's
24 eye mirrors posted anywhere in the vicinity of that area?
25      A.   Not that I'm aware of.
```

```
 1      A.   Not personally.
 2      Q.   What about things that you have heard from other
 3 employees?
 4      A.   Only things related to rumor or things that were
 5 brought to me.
 6      Q.   Any other rumors or things that were brought to
 7 you that we haven't already talked about?
 8      A.   No, sir.
 9      Q.   Did you ever have occasion to speak to members
10 of management about Bob's unsafe operation?
11      A.   I believe I did.
12      Q.   Do you remember who that was?
13      A.   May have been Brian McGraph.  May have been Mike
14 Conley, both of whom were -- Brian McGraph was plant
15 manager.  Mike Conley used to be the HR guy.
16      Q.   Regardless of who it was, you do recall speaking
17 to management about your concerns of Bob Francia's
18 operation of fork trucks?
19      A.   Yes.
20      Q.   Do you remember generically, not verbatim, but
21 what the substance of that conversation was?
22      A.   It was just related things that I had heard.
23      Q.   Do you recall if any of those conversations, the
24 substance of which was something's got to be done, it's
25 only a matter of time before he strikes someone?
```

```
 1        A.   Probably, or at least that there are concerns
 2   being brought regarding speed or carelessness.
 3        Q.   Those conversations would have occurred prior to
 4   the incident involving Jake?
 5        A.   Yes.
 6        Q.   Do you know if there were any qualifications to
 7   drive fork trucks besides passing this training course?
 8        A.   I believe you had to have a valid Ohio driver's
 9   license in order to be granted a fork truck license.
10        Q.   Okay.  Do you know if the fork trucks at the
11   time of Jake's injury had mirrors on them, side view
12   mirrors, rear view mirrors?
13        A.   I believe they did.
14        Q.   Do they now?
15        A.   Yes, they do.
16        Q.   Again, from the benefit of depositions
17   yesterday, I learned in certain portions of the plant,
18   there are aisleways dedicated for pedestrian traffic?
19        A.   Yes.
20        Q.   And there are aisleways dedicated, well, maybe
21   not dedicated, because I'm sure employees have to cross
22   from one pedestrian way to another --
23        A.   Yes.
24        Q.   -- but that there are marked lanes for fork
25   trucks?
```

Charlene E. Nicholas & Assoc., Inc.
111 Briar Heath Circle, Dayton, OH  45415-2601
Phone:  (937) 277-8512        Fax:  (937) 275-8179