UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HENRY WILLIAMS | * | Case No. C-1-02-533 |
| Plaintiff, | * | Judge Beckwith |
| vs. | * | |
| MILTON CAN COMPANY, INC. and BWAY MANUFACTURING | * | AFFIDAVIT OF EXPERT GEORGE L. SMITH, Ph.D., PE |
| Defendants. | * | |

In the state of Ohio
County of Franklin

Now comes George L. Smith, having been duly cautioned and sworn and states as follows:

1). I am an adult, and competent to testify to the following matters.

2). The attached CV (Ex. A) is a true and accurate summary of my education, teaching positions, work history, and professional memberships.

3). I have been employed as a safety consultant on behalf of the Plaintiff in this case, and have personally reviewed the deposition testimony of: Henry Williams, Bob Francia, Allen Artis, Charles Kobman, Greg Janigan, Ralph Briggs, Gerald Hanifen, and Walter Valentine.

4). I have reviewed photographs taken of the location where this incident occurred.

5). I am a specialist in human factors engineering and ergonomics who has been qualified to testify in numerous courts in various jurisdictions in the United States, including many times in Ohio courts regarding matters relating to workplace safety, machine guarding and the like.



6). Based on information received and reviewed, Henry Williams was injured on July 29, 2000 when, as an employee of B-Way, he was crushed by a fork truck operated by co-employee Robert Francia.

7). Williams testified he was in the process of refueling a fork truck. He was on an exterior dock reattaching a full liquid petroleum tank when Francia backed a fork truck into him pinning him between the two 10,000 pound vehicles. It is my opinion to a high degree of human factor engineering certainty that B-Way knew that Bob Francia's reckless driving posed a dangerous instrumentality to pedestrians in the plant.

My opinion in this regard is based in part on the following:

B-Way's Production Manager, Walter Valentine testified he knew Francia had numerous incidents involving reckless operation of the fork trucks. Valentine knew that Francia had dropped cans on more than one occasion, had almost hit at least two co-workers, had driven a fork truck partially off of a loading dock, and had struck a valve causing flooding in the salvage area. Valentine suspended Francia from the truck based on his safety concern for pedestrians. According to Valentine, Francia was not supposed to return to driving fork trucks until he was retrained by the company's designated trainer, Charles Kobman. Supervisor Ralph Briggs was supposed to ensure Francia was retrained.

Francia testified he was never suspended, and was never retrained. Francia testified that he offered to surrender his fork truck license on at least two (2) occasions. when supervisors confronted him about his reckless driving. Approximately two weeks before Williams was crushed, Francia almost struck yet another co-worker, Allen Artis. This was yet again taken to management, with no further discipline imposed. Artis testified about numerous prior near misses involving Francia and pedestrians.

8). It is my further opinion that to high degree of human factor engineering that B-Way knew that employees exposed to Francia's reckless driving were substantially certain to be injured.

My opinion in this regard is based in part on the following:

Charles Kobman, the employee designated by management as fork truck safety trainer, testified that fork trucks are the most significant hazard and risk in the facility. He referred to fork trucks as a "loaded gun" and a "deadly weapon". Kobman was responsible for re-certifying drivers with poor safety performance. In his position, foremen were obligated to call incidents to his attention. Despite this, Kobman was only told of <u>one</u> isolated incident involving Francia spilling cans. He was not told Francia drove partially off the loading dock. He was not told of the near miss with Wayne Pike nor the near miss with Allen Artis. He was not told of the incident where Francia hit a valve, flooding a portion of the plant. Kobman testified that each of these instances would justify retraining on safe fork truck operation. He testified that a second infraction following retraining could justify permanent removal, but definitely following a fourth incident.

In this industrial plant setting, a foreman is acting as management on the plant floor. The knowledge possessed by one or more foremen is knowledge of management because the foreman has the immediate responsibility over the crew. In this case the knowledge of the foremen was the same as the knowledge of Kobman.

Kobman's knowledge is imputed to management, as management delegated the duties to train and oversee certification of fork trucks to Kobman. B-Way's designated trainer was aware of the company's obligations under the Occupational Safety and Health Act of 1970, as amended. (OSHA). Pursuant to 29 CRF ch. XVII section 1910.178 (l)(4), B-Way was <u>required</u> to provide refresher training to Francia after each of the numerous incidents and near misses brought to management's attention. Not only did B-Way fail to provide this refresher training, they failed to provide this information to their designated trainer. Although management was aware of multiple infractions. Kobman was only told about one incident where Francia spilled a load of cans.

Francia doesn't recall ever being suspended nor retrained. B-Way Production Manager Valentine testified he suspended Francia after he almost hit Wayne Pike. It was his intention not to permit Francia to return to driving until he was retrained based on Valentine's concern that someone was going to be hurt by Francia. Valentine testified he would permanently suspend Francia for a second near miss following retraining. B-Way management was acutely aware of numerous near misses involving Francia and pedestrians, as well as actual collisions with inanimate objects. By their own policies and procedures Francia should have been permanently barred from operating fork trucks before he finally struck a pedestrian. B-Way knew Francia was reckless and was operating a "loaded gun" and "deadly weapon". Based on his prior incidents, known to B-Way, it was only a matter of time before Francia seriously injured someone.

9). It is my further opinion that B-Way, through its practices and procedures acted to require Williams and Francia to perform their duties on the date of injury. Although there is no testimony that any supervisor specifically directed Williams to drive his fork truck to the dock to refuel it, Briggs, Williams' supervisor, specifically requested Williams' participation in inventory day. Work groups were assigned specific areas of the plant to inventory. Inherent in the inventory process, materials must be moved to enable a complete inventory count. This required the use of fork trucks, which require fuel to operate. Williams testified he went to the nearest refueling point. Refueling and driving the fork truck were an integral part of Williams assigned duties on July 29, 2000.

10). These opinions are based on the evidence known by me at this time, if additional facts and information come to light, I may supplement these opinions.

Further affiant sayeth naught.

_____
George L. Smith, Ph.D., PE.

Sworn to before me and subscribed in my presence this 18th day of October 2004.

_____
Notary Public



BRYCE D. RINKER
Notary Public, State of Ohio
My Commission Expires 07-07-08