IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HENRY L. WILLIAMS, | Case No. C-1-02-533 |
| Plaintiff, | |
| | Judge Beckwith |
| v. | |
| | DEFENDANTS' REPLY |
| MILTON CAN COMPANY, INC., and | MEMORANDUM IN SUPPORT OF |
| BWAY MANUFACTURING, INC. | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

I.   **INTRODUCTION**

Plaintiff's response does nothing more than *suggest* that there are potentially hazardous conditions present in any modern manufacturing facility such as Bway Manufacturing Inc.'s ("Bway's") local facility. Plaintiff suggests that some of the hazards might have even been reduced if Bway had taken additional precautions (i.e., additional driver's training for co-employee Robert Francia, who accidentally backed into Plaintiff on July 29, 2000) or employed different precautions (i.e., revoking Mr. Francia's forklift license rather than employing progressive discipline on those occasions where Mr. Francia may have driven in a careless manner). The suggestions made in Plaintiff's response do nothing more than level an accusation of possible negligent conduct. Plaintiff's response does not present evidence of intentional conduct. There is no evidence from which reasonable minds would conclude that Bway knew Henry "Jake" Williams was faced with a dangerous condition on the day he was involved in the forklift accident, that Bway knew harm was certain or substantially certain to occur and that a member of Bway's management, with such knowledge, required Jake Williams to work under any dangerous conditions.

The undisputed evidence demonstrates that Jake Williams was a long-time employee who was well liked by everyone at the plant, including management. No one wanted to see Mr. Williams injured. Bway had an active forklift training program instructing individuals on safe operation around the plant. There were rules, policies, and procedures in place designed to prevent accidents. Mr. Williams' co-worker, Robert "Bob" Francia, completed his training courses and had both a valid forklift driver's license and an Ohio driver's license. When it was brought to Bway's attention that Mr. Francia drove his forklift in what others considered to be a careless manner, Mr. Francia was disciplined and even suspended. It was Bway's hope that progressive discipline would foster a safe work environment. Indeed, Bway had an impressive safety record, having only one prior forklift/pedestrian accident in the decade prior to Mr. Williams' accident. Ironically, it was Mr. Williams who was driving the forklift that hit a pedestrian many years earlier. There was no accusation at that time that the earlier accident was an intentional act.

Rather than presenting evidence of an intentional tort as to Mr. Williams' accident, Plaintiff presents speculation, incomplete information, and personal beliefs unsubstantiated by competent record evidence. Further, many of the citations to the record and deposition testimony contain unsubstantiated and inadmissible hearsay statements regarding Mr. Francia's driving record. Such information should not be considered for purposes of summary judgment. *See* Fed. R. Civ. Pro. 56.

Mr. Williams' accident was no more predictable than a traffic accident and not substantially certain to occur. Plaintiff is unable to present any legal authority, where a court faced with a similar fact pattern, found an intentional tort. Mr. Williams' accident falls within

1076389_1.DOC

the scope of the relief provided by the Ohio Workers' Compensation Act, and this claim for an exception based upon an "intentional tort" should be dismissed as a matter of law.

## II.   PLAINTIFF CANNOT ESTABLISH THE ELEMENTS OF AN INTENTIONAL TORT

Plaintiff misunderstands the nature of an intentional tort. An employee may institute a tort action against his or her employer only when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. *Goodin v. Columbia Gas Of Ohio, Inc*, ( 4th Dist. 2000), 141 Ohio App.3d 207, 216, 750 N.E.2d 1122. The Ohio Supreme Court in *Van Fossen* recognized that the concept of intentional tort should not be interpreted too broadly as "this single exception would swallow up the entire 'exclusivity' provision of the [Workers' Compensation] Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or may not lead to eventual injury or disease." *Id.* citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St. 3d 100, 115-116, 522 N.E.2d 489, 503 (1988). The Supreme Court continued, "Thus in setting an appropriate standard by which to measure an 'intentional wrong,' we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality – but a reality nevertheless—that industry knowingly exposes workers to the risks of injury and disease." *Id.* In determining the level of "risk exposure that will satisfy the intentional tort exception … courts must examine not only the conduct of the employer, but also the context in which that conduct takes place; the resulting injury or disease, and the circumstances in which it is inflicted on the worker, may fairly be viewed as a fact of life of industrial employment, or is it rather beyond anything the legislature could have contemplated

1076389_1.DOC

has entitled the employee to recover only under the Compensation Act." *Id.* citing *Van Fossen* at 116, 522 N.E.2d at 503-04.

As the court in *Fyffe* further explained, "[w]here the employer acts despite his knowledge of some risk, his conduct may be negligent. As the probability increases that particular consequences may follow, the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the results. However, the mere knowledge and appreciation of a risk— something short of substantial certainty – is not intent" *Miko v. Chassis*, No. 18940 (Ohio App. 2 Dist), 2002 WL 91272 (attached as Ex. F to Bway's Memorandum in Support); *see also Cox v. Barsplice Products*, No. 2001-CA-1 (Ohio App. 2 Dist), 2001 WL 669336 ("knowing that the employee is at risk is insufficient; instead, the employer must be virtually certain the employee will be injured.")(attached hereto as Exhibit A).

A.  **Bway Had No Knowledge Of The Exact Danger Encountered By Mr. Williams On July 29, 2000.**

Plaintiff acknowledges that he must demonstrate that Bway had knowledge of the "exact danger." As the Court in *Richie v. Rogers Cartage Co.*, 89 Ohio App. 3d 638, 644, 626 N.E.2d 1012 (1993), explained, under *Fyffe*, an employee need not prove that the employer had an actual subjective intent to cause the injury sustained or that the employer knew that the exact injury sustained would occur. However, the employee must still prove "that the employer knew that because of the exact danger posed, the employee would be harmed in some manner similar to the injury sustained or that the employer knew that because of the exact danger posed, it was highly

4

probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained." *Id.* (Emphasis added).

As the Montgomery County Court of Appeals held in *Brill v. Tilton* (Ohio App. 2 Dist.), 2001 WL 896716 (attached as Exhibit B), the employer's knowledge of the exact danger is critical to satisfy a claim for intentional tort. In *Brill*, the employee complained to his foreman "we needed some more help" to perform a specific task and "we shouldn't do it that way. It's more safe to do it with more people." The employee did not, however, explain *why* the additional personnel were needed to complete the task. *Id.* (emphasis in original). Consequently, the Montgomery County Court of Appeals held that the foreman did not know of the "exact danger" facing the employee. The Court also held that summary judgment was proper despite evidence of previous accidents as the prior accidents were not substantially similar to the one suffered by the plaintiff in that case.

In this case, Plaintiff argues that his co-worker's prior acts of carelessness or negligent operation of a forklift create knowledge of the "exact danger" in the future. As will be explained in more detail below, negligent conduct is rarely predictable or substantially certain to occur. Further, simply because someone acts carelessly on one occasion does not mean that an individual will act carelessly in the future or repeat their negligence even if the same set of circumstances arises. It is absurd to equate prior negligent conduct with knowledge of the "exact danger" of harm. Every individual in a manufacturing facility has the propensity to act, on occasion, in a careless manner.

As to Mr. Francia, Bway's management knew that he was a properly trained and certified forklift operator and that Mr. Francia had a valid Ohio drivers' license.[1] On those occasions where it learned Mr. Francia's operation fell below standard, he was disciplined. Bway took corrective action, where appropriate, to remind operators, including Mr. Francia, to drive cautiously. Plaintiff's callous argument that Bway should have rejected its union-negotiated progressive discipline policy and simply revoke Mr. Francia's forklift license permanently is inadequate as a matter of law. It is also exceedingly harsh. As the Court in *Estep v. Rieter Automotive North American* 148 Ohio App.3d 546, 774 N.E.2d 323 (2002), held, "whether something was adequate may be a question of negligence but does not rise to the level necessary to establish an intentional tort." Indeed, at least one court has held that the complete failure to provide fall protection to its employees who were working at certain heights would not constitute an intentional tort. *See Gertz v. Nerone & Sons*, No. 80422, 2002 WL 1728594 (roofing contractors' failure to provide OSHA-mandated fall protection to employees working above 25 feet did not establish that the contractor had actual or subjective knowledge a fall would be substantially certain to occur, where there was no evidence of a similar accident ever occurring). (Attached as Ex. C).

Additionally, Mr. Francia had never been involved in any accident where a pedestrian was hit by his forklift. There is no evidence that he had been reprimanded for almost backing into a pedestrian. The only forklift accident where a pedestrian was hit occurred more than a decade ago and involved the Plaintiff. Moreover, there had been no prior accidents, let alone

---

[1] Contrary to Plaintiff's assertion, Bway produced some information related to Mr. Francia's certification, training, and status as a forklift driver. It produced a copy of Mr. Francia's forklift operator's license. It also produced certain incident reports regarding Mr. Francia's driving records including the verbal reprimand referred to in his response brief.

forklift accidents, in the dock area, where Mr. Williams was injured. The day Mr. Williams was injured was an inventory day and traffic on the dock area would have been minimal.

As the Ohio Supreme Court explained in *Van Fossen*, "[t]here are many acts within the business or manufacturing process which involve the existence of dangers." (*Van Fossen*) *supra*. Such knowledge of the general risks associated with the manufacturing process does not establish an intentional tort or impute knowledge to an employer of the exact danger. Plaintiff's allegation that Bob Francia was an "accident waiting to happen" because he had, on occasion, driven in a negligent manner, fails as a matter of law.

### B. Bway Did Not Know That Harm To Mr. Williams Was Certain Or Substantially Certain To Occur.

The existence of potential dangers in the workplace is a common fact of industrial life and one which the workers' compensation system is designed to mitigate: "the mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent." *Fyffe v. Jeno's, Inc.*, 59 Ohio St. 3d 114, syllabus, 570 N.E.2d 1108 (1991) (*citing Van Fossen*, 36 Ohio St. 3d at 101, syllabus). Plaintiff understands that it is also his burden to demonstrate that Mr. Williams' supervisors actually *knew* that injury to him was "certain or substantially certain to result," in order to satisfy the second part of the *Fyffe* and *Van Fossen* test. The Supreme Court of Ohio emphasized "the line has been drawn by the courts at the point where the known danger ceases to be only a *foreseeable* risk which a reasonable person would avoid, and becomes *in the mind of the actor*, a substantial certainty." *Van Fossen*, 36 Ohio St. 3d at 115 (emphasis added).

Plaintiff cannot show that any of Mr. Williams' supervisors actually *knew* that injury to him was "certain or substantially certain to result," as required by the second part of the *Fyffe* and *Van Fossen* test. As mentioned above, the negligent conduct of individuals is rarely, if ever, predictable. Without predictability, an action or event cannot be substantially certain to occur.

Further, a lack of prior injuries or accidents involving the instrumentality or process at issue will negate a plaintiff's claim that the employer had actual knowledge that an injury was substantially certain to occur. *See, e.g., Van Fossen*, 36 Ohio St. 3d at 118, 522 N.E.2d at 505. See *Foust v. Magnum Restaurants, Inc.*, 97 Ohio App. 3d 451, 455, 646 N.E.2d 1150, 1153 (1994) (lack of prior accidents involving procedure strongly suggests injury was not substantially certain) and other cases cited in Bway's Memorandum in Support. Prior to Mr. Williams' accident, Mr. Francia had never struck a co-worker while driving a forklift. A few instances of driving in close proximity to pedestrians or having a "less than stellar" driving records does not suggest that he was an unsafe driver or that it is substantially certain that pedestrians would be injured when he operated a forklift. See *Lapp v. Planes Moving & Storage, Inc*, No. CA86-12-182, 1987 Ohio App. LEXIS 7949, *8 (Ohio Ct. App. July 20, 1987) (Attached as Exhibit G to Bway's Memorandum in Support) (a forklift accident is "the very type of accidental injury… workers' compensation laws were designed to cover. To allow this case to proceed as an 'intentional tort' action would be the ultimate unreasonable and ludicrous extension of that particular common law action.")

Moreover, Bway has a stellar record of forklift operation at the plant, despite the claim of Plaintiff's hired expert that Bway violated certain OSHA regulations.[2] The history of accidents involving forklifts striking pedestrians is scant, having only one other accident in the last twenty years. What is even more unusual is that this accident occurred on an inventory day on the outdoor dock, a day when there is little, if any, pedestrian traffic.

---

[2] The use of an expert is simply unnecessary at this stage of an intentional tort case and is objectionable. The Court should focus on the three-prong test outlined in *Van Fossen* and *Fyffe* and the factual evidence related thereto. Sarcastically speaking, the only expert needed in an intentional tort analysis is a "knowledge" expert to determine what Bway's management knew about the situation and its plant operations. Simply put, the affidavit of plaintiff's expert is not relevant to the issues presented and is offered as an attempt to give some credibility to plaintiff's absurd argument that the past negligent conduct of a co-worker can give rise to an intentional tort if the co-worker is negligent in the future.

Additionally, Bway employed both a training program to familiarize individuals with the correct operation of forklifts and a progressive discipline policy to remind operators of their correct and safe operation. Bway attempted to reminded Mr. Francia to operate carefully by means of a verbal reprimand and even a temporary suspension. Bway's management thought that this was the most effective way to deal with this union employee, consistent with its policies and procedures. It was not substantially certain to Bway's management that its progressive discipline policy would be ineffective at preventing accidents such as the one Mr. Williams was involved.

Further, Plaintiff's suggestion that Mr. Francia needed to be retrained is nothing more than an accusation of negligence. Moreover, it is unlikely that such additional training would have prevented the accident. Mr. Francia testified that he utilized proper procedure and that he looked over his shoulder while backing. He simply didn't see Mr. Williams.

### C.      Bway Did Not Require Mr. Williams to Work Under The Alleged Conditions.

Plaintiff argues that an employer does not have to expressly order an employee to participate in a dangerous activity. *See Hannah v. Dayton Power & Light* (1998), 82 Ohio St.3d 482, 696 N.E.2d 1044. Plaintiff must still, however, demonstrate that Bway required, through its actions and policies its employees to perform a dangerous task. *Hannah*, 82 Ohio St.3d at 482, 696 N.E.2d at 1044; *see also Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St. 3d 135, 139, 522 N.E.2d 477, 481 (1988) (employee order to "run the thing anyway").

In the case at bar, Plaintiff has not presented any evidence that raises an inference that Bway required or demanded Jake Williams to engage in any dangerous tasks. Mr. Williams admits that he did not deem his job to be unsafe, nor was he ever required to work under any unsafe conditions (Williams Depo. Tr. at p. 166:7-166:13).

Plaintiff concedes that Mr. Williams volunteered to work on the day of his injury. Plaintiff also concedes that Mr. Williams chose to be on that forklift, having volunteered to move a load for his inventory group. It was also his choice to be at that particular refueling station given that it was one of many in the plant. Bway never *demanded* or *required* that Mr. Williams work under any conditions which Bway knew were dangerous.

## IV. CONCLUSION

As Bway has repeatedly recognized, the accident, which occurred on July 29, 2000, was unfortunate. Plaintiff's allegations and suggestions for avoiding the accident, even if true, do not amount to more than negligent conduct. The circumstances surrounding Mr. Williams' injury do not involve the types of conduct which can properly be classified as an "intentional tort," an exception to the exclusivity of the Workers' Compensation Act. Under these circumstances, summary judgment in favor of Bway is compelled as a matter of law.

Respectfully submitted,

_____
J. L. Sallee, Jr. (0030437)
David D. Black (0063715)
DINSMORE & SHOHL
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Trial Attorneys for Defendants
Milton Can Company, Inc. and
BWAY Manufacturing, Inc.

1076389_1.DOC

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing has been served by ordinary U.S. Mail upon Plaintiff's attorneys, William P. Allen and Patrick W. Allen, CASPER & CASPER, One North Main Street, P.O. Box 510, Middletown, Ohio 45042, this 22 day of November, 2004.

                                                             _____
                                                             David D. Black

#1076389

1076389_1.DOC