IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Henry L. Williams,                    )
                                      )
            Plaintiff,                ) Case No. 1:02-CV-533
                                      )
      vs.                             )
                                      )
Milton Can Company, Inc.,             )
et al.,                               )
                                      )
                                      )
            Defendants.               )

O R D E R

This matter is before the Court on the motion for summary judgment filed by Defendants Milton Can Company, Inc. and BWAY Manufacturing, Inc. (Doc. No. 20).  For the reasons set forth below, Defendants' motion for summary judgment is not well-taken and is **DENIED**.

I. Background

In this case, Plaintiff Henry L. "Jake" Williams presents a claim against his employer, Milton Can Company, Inc., under Ohio law for an intentional tort after he sustained a serious workplace injury.[1]  Plaintiff is a citizen of the state of Ohio.  Complaint ¶ 5.  Milton Can and BWAY are Delaware corporations and citizens of the state of Delaware.  Id. ¶¶ 2, 3, 5.  The amount in controversy in this case is in excess of

---

[1] At the time of his injury, July 2000, Plaintiff was employed by Milton Can Company.  In July 2001, Milton Can Company and BWAY Manufacturing, Inc. merged and continued in business as BWAY Manufacturing, Inc.  Complaint ¶ 3.  The relevant events in this case occurred before the merger.  Therefore, although Plaintiff has named Milton Can and BWAY as defendants, in most instances this order will refer only to Milton Can.

$75,000.  Id. ¶ 5.

On July 29, 2000, Plaintiff was seriously injured at work when he was pinned between two 10,000 pound forklifts. The accident occurred on an exterior dock at Milton Can's Newtown, Ohio facility. Plaintiff had driven onto the dock to change the liquified petroleum ("LP") gas tank on his forklift.[2] The LP tank storage rack was located on the dock. While Plaintiff was dismounted at the rear of the forklift, co-worker Bob Francia drove onto the dock to move a skid that was not supposed to be included in the on-going inventory. Francia turned in the opposite direction from Plaintiff's position and did not see Plaintiff or his forklift when he came onto the dock. As Francia was backing up to position his skid, he crushed Plaintiff between the counterweights of the two forklifts. Francia testified that before he reversed the forklift, he looked around and gave a warning blow of the horn. Francia Dep. at 53. Plaintiff did not hear the forklift's back-up alarm. Plaintiff sustained pelvic and leg fractures and other injuries to his back and urinary tract in the accident. Complaint ¶ 15.

Viewed in the light most favorable to the Plaintiff, the record demonstrates that although Francia had received training and was a certified forklift operator, he was at best an erratic driver in actual practice. There were at least three incidents where Francia nearly struck pedestrians at the plant with his forklift which were reported to management personnel.

---

[2] The forklifts were fueled by liquified petroleum gas.

Valentine Dep. at 16;  Artis Dep. at 14-16; Hanifen Dep. at 22-23.  Francia once ran his forklift into a water valve and caused flooding in the salvage department.  Jahnigen Dep. at 17; Valentine Dep. at 24.  On still another occasion, Francia drove a forklift partially off of the loading dock.  Valentine Dep. at 24.  The safety risk that Francia posed while driving a forklift was a topic of discussion at more than one union meeting and the shop steward complained about Francia to the production supervisor.  Jahnigen Dep. at 20-21; Valentine Dep. at 23.  On one occasion, out of concern that he was a safety risk, the plant production manager temporarily suspended Francia from driving a forklift so he could be retrained after a near-miss with a pedestrian.  Id. at 21.  After having been retrained on the forklift and reinstated to his position, Francia again almost hit a pedestrian.  Hanifen Dep. at 26-27.  This near-accident was also reported to management.  Id.  This final sequence of events - near-accident, suspension, near-accident - occurred within in a year of Plaintiff's accident with Francia.  Id.

      Milton Can now moves for summary judgment on Plaintiff's intentional tort claim.  In its motion, Milton Can argues that summary judgment in its favor is appropriate because the record fails to show that it had knowledge that an accident was substantially certain to occur as a result of Bob Francia's continued operation of a forklift and/or that it had knowledge that Francia was a dangerous instrumentality or condition.  Milton Can also argues that summary judgment is appropriate

3

because it did not require Plaintiff to work in a dangerous environment.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

III. Analysis

In order to prevail on a claim for an employer's intentional tort, the plaintiff must prove: 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; 2) knowledge by the employer that if the employee is subjected to such dangerous process, procedure, instrumentality or condition then harm to the employee will be substantially certain; and 3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. <u>Fyffe v. Jenos, Inc.</u>, 570 N.E.2d 1108, 1112 (Ohio 1991).

Milton Can first argues that Plaintiff cannot prevail on his intentional tort claim because it had no knowledge that an accident was substantially certain to occur as a result of Francia's continued operation a forklift. Milton Can also claims that it had no knowledge that Francia presented an dangerous instrumentality or condition. These arguments are based primarily on the fact that while Francia had some close calls, he had never actually hit anyone with a forklift before the accident involving Plaintiff. Viewed in the light most favorable to Plaintiff, however, the record clearly establishes both of these elements.

Initially, the Court notes that Milton Can had actual knowledge that Francia driving a forklift was a dangerous instrumentality. This fact is demonstrated by Francia's temporary suspension for retraining because the production

7

supervisor was concerned that Francia would hurt someone with a forklift.  Valentine Dep. at 21.  The supervisor also recognized that a collision involving a 10,000 pound forklift would cause serious if not life-threatening injuries to a pedestrian.  Id. at 22.

      Moreover, viewed in the light most favorable to Plaintiff, the record demonstrates that Milton Can had knowledge that an accident involving Francia was substantially certain to occur.  While it is true that Francia had never actually hit anyone with a forklift before he hit Plaintiff, the record shows that there were at least three and perhaps as many as five incidents where Francia almost hit co-workers of which management personnel were aware.  Management personnel were also aware that Francia spilled cans, ran his forklift at least partially off of the loading dock, and caused flooding after he ran his forklift into a water valve.  The last near miss occurred after Francia had been suspended for operating a forklift out of safety concerns.  The record supports a conclusion that Francia literally was an accident waiting to happen when driving a forklift.  In Taulbee v. Adience, Inc., BMI Division, 696 N.E.2d 625 (Ohio Ct. App. 1997), the court held that the employer was on notice that an injury was substantially certain to occur because of an unsafe scaffolding where two employees nearly fell off of the scaffolding prior to the plaintiff's fall.  Id.  Similarly, Francia's several near misses with pedestrians, combined with other incidents which demonstrated Francia's inability to operate

the forklift safely and Milton Can's knowledge that an employee could be seriously injured if struck by a forklift, are sufficient for a reasonable juror to find in favor of Plaintiff on the first two elements of his claim.

Finally, Milton Can argues that it did not require Plaintiff to work in an unsafe environment because he volunteered to work the day of the accident,[3] volunteered to drive the forklift, volunteered to refuel the forklift, and choose which LP storage rack at which to refuel the forklift. These are relevant but by no means dispositive considerations. Certainly the payment of overtime as an incentive was designed to get as many employees as possible to work on inventory day.[4] Moreover, the fact that the accident occurred on inventory day is not of too much consequence because it was the type of accident that could have occurred on any ordinary work day. The remainder of Milton Can's arguments appear to attempt to find fault with Plaintiff for doing the tasks associated with his job that day in a diligent manner when there is no suggestion in the record that Plaintiff was in any way at fault for the accident. In other words, it is not as if Plaintiff was injured because he knowingly bypassed safety guards or did not wear issued protective equipment, as is the case in some industrial

---

[3] Plaintiff was injured on "inventory day." Employees were not required to work on inventory day but they were paid overtime for volunteering to work.

[4] The record shows that on inventory day even management employees pitched in to count stock.

accidents.  On this record, by all appearances, Plaintiff truly was an innocent bystander.  Consequently, based on this record a reasonable juror could find for Plaintiff on the final element of his intentional tort claim as well.

     For the reasons stated, a reasonable juror could find that the evidence supports each of the elements of Plaintiff's intentional tort claim.  Accordingly, Defendants' motion for summary judgment is not well-taken and is **DENIED.**

     **IT IS SO ORDERED**

Date January 24, 2005            s/Sandra S. Beckwith  
                                          Sandra S. Beckwith, Chief Judge  
                                          United States District Court